UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-60883-CIV-COOKE/TURNOFF

BEACH BARS USA, LLC, ,

    Plaintiffs,
vs.

INDEMNITY INSURANCE
CORPORATION OF DC,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT

THIS MATTER is before me on Defendant's Partial Motion to Dismiss Amended Complaint (ECF No. 30). I have reviewed the record, the arguments, and the relevant legal authorities. For the reasons explained below, the Motion is granted in part and denied in part.

### I. BACKGROUND[1]

On February 15, 2009 and again on February 15, 2010, Beach Bars USA, LLC ("Beach Bars") Beach Spot, Inc. ("Beach Spot"), and 219 S. Fort Lauderdale Beach Boulevard (collectively "Plaintiffs") obtained insurance policies from Defendant Indemnity Insurance Corporation of DC ("Indemnity"). The policies provide insurance coverage for "personal-injury claims of patrons occurring at the insured and designated premises identified in the policies." (Am. Compl. at ¶ 6, ECF No. 26). The insured and designated premises included "bars and restaurants owned, operated, and managed by Plaintiffs at 229 S. Ft. Lauderdale Beach Boulevard

---

[1] These facts are taken from Plaintiffs' Amended Complaint. *See Beck & Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in light most favorable to the plaintiff.").

and 219-223 S. Ft. Lauderdale Beach Boulevard." (*Id.*). On January 14, 2011, Indemnity rescinded, and declared the polices void *ab initio*, because "Beach Bars withheld or failed to completely disclose its actual operations, misrepresented its actual operations, misrepresented its annual receipts, withheld pertinent information and failed to disclose all operating entities." (*Id.* Ex. E). After rescinding the policies, Indemnity returned the deposit premiums Plaintiffs previously paid for the insurance coverage. Plaintiffs have not accepted the returned premiums and have denied that they misrepresented, concealed or failed to disclose any material fact.

Prior to rescinding the policies, Indemnity began defending Beach Bars in a personal injury lawsuit filed by Ryan McGlynn ("the McGlynn lawsuit"). Subsequent to rescinding the insurance policies, Indemnity withdrew its defense in the McGlynn lawsuit. Plaintiffs' also sought coverage for two additional personal injury lawsuits filed against affiliated entities. The first lawsuit was filed by Valdevir Camargo against Beach Spot (the "Camargo lawsuit"). The second lawsuit was filed by Joshua Wright against 223 South Fort Lauderdale Beach Boulevard, LLC. (the "Wright lawsuit"). Although Plaintiffs allege these two additional lawsuits would also have been covered by the insurance policies, Indemnity has refused to provide coverage. Additionally, Plaintiffs were put on notice of eight claims involving individuals claiming to have suffered personal injuries on premises covered by the insurance policies ("the unfiled lawsuits"). No lawsuits have been filed on any of these claims.

On April 25, 2011, Plaintiffs initiated this action against Indemnity, seeking declaratory relief that they are entitled to coverage under the insurance policies (Count I), and damages arising from a breach of the insurance contracts (Count II). On June 3, 2011, Indemnity filed a Motion to Dismiss, or in the Alternative, Motion for More Definite Statement. (ECF No. 13).

This Court granted Indemnity's Motion for More Definite Statement, and granted, in part, the Motion to Dismiss. (*See* ECF No. 25). Pursuant to the Court's Order, Plaintiffs filed an Amended Complaint on October 31, 2011. On November 14, 2011, Indemnity moved for partial dismissal of Plaintiffs' amended claims, asserting that the named defendants in the Camargo and Wright lawsuits are not entitled to coverage under the policies. Indemnity also asserts that Plaintiffs failed to comply with the Court's directive to provide a more definite statement regarding the unfiled lawsuits.[2]

## II. LEGAL STANDARDS

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a complaint subject to a motion to dismiss, all factual allegations must be accepted as true, however mere conclusory statements "are not entitled to the assumption of truth." *See Iqbal*, 129 S. Ct. at 1949–50. The factual allegations alone must state a facially plausible entitlement to relief. *Id.* The standard of facial plausibility is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

**A. The Camargo and Wright Lawsuits**

Plaintiffs argue that there are sufficient facts to establish coverage for the Camargo and Wright lawsuits, thereby triggering Indemnity's duty to defend and indemnify Plaintiffs.

---

[2] Plaintiffs' claims regarding the McGlynn lawsuit are not subject Indemnity's Partial Motion to Dismiss.

Indemnity, however, argues that Plaintiffs' claims related to the Camargo and Wright lawsuits should be dismissed because the named defendants in the underlying complaints are not named insureds under the insurance policies at issue. (Mot. to Dismiss at 6-7, ECF No. 30). Under Florida law, an insurer's "duty to defend must be determined from the allegations in the [underlying] complaint." *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006) (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005)). In other words, an insurer's duty to defend arises when the underlying complaint "'alleges facts that fairly and potentially bring the suit within policy coverage.'" *Hartford Acc. & Indem. Co.*, 466 F.3d at 1292 (quoting *Jones*, 908 So. 2d at 443). Ambiguous terms of an insurance policy must be liberally construed in favor of coverage. *See State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). When more than one interpretation of insurance policy language exists, the interpretation allowing for greater coverage prevails. *Id.* Thus "[a]ny doubts regarding the duty to defend must be resolved in favor of the insured." *Hartford Acc. & Indem. Co.*, 466 F.3d at 1292 (quoting *Jones*, 908 So. 2d at 443). When there is no duty to defend, there is also no duty to indemnify. *See Kenneth Cole Prods., Inc. v. Mid-Continent Cas. Co.*, 763 F. Supp. 2d 1331, 1334 (S.D. Fla. 2010).

The heart of this dispute is not whether the alleged misconduct in the underlying complaints are covered under the insurance policy, but rather whether the named defendants in the underlying lawsuits are covered entities. Plaintiffs assert that the policies cover the "designated premises identified in the policy." (Am. Compl. at ¶ 6). Plaintiffs further state that the insurance policies were inclusive of "bars and restaurants owned, operated and managed by plaintiffs at 229 S. Ft. Lauderdale Beach Boulevard and 219-223 S. Ft. Lauderdale Beach

Boulevard." (*Id.*). Indeed, the primary policy states that the insurance applies to certain claims "arising out of: 1. The ownership or use of the premises, physical street address, shown in the schedule; 2. or the project shown in the schedule." (*Id.*, Ex. A at 24). The relevant schedule lists the project as a "Sports Bar" and the insured premises as the same physical street addresses described in the Amended Complaint. (*Id.*). The Camargo Complaint names Beach Spot, Inc. d/b/a RockBar and John Doe as defendants, and alleges that Beach Spot, Inc. d/b/a RockBar is a business in the food and beverage service with its principal place of business at 219 South Fort Lauderdale Beach Boulevard.[3] (*Id.*, Ex. G at 1–2). The Wright Complaint names 223 South Fort Lauderdale Beach Blvd., LLC d/b/a Exit 66 Nightclub as the sole defendant. (*Id.* Ex. H at 1).

The Amended Complaint does not associate Beach Spot with the name RockBar, Sangria or any other name. (*Id.*, at ¶ 15). The policy, however, contains an amendment that adds "d/b/a Sangria" as a named insured to the existing policy issued to "Beach Bars USA, LLC ETAL." (*Id.*, Ex. A at 63).[4] The policy also contemplates a business in the food and beverage service located at 219 South Fort Lauderdale Beach Boulevard – a fair description of Beach Bars USA, LLC d/b/a RockBar. The Amended Complaint further alleges that at the time of the incident giving rise to the Wright lawsuit, 223 South Fort Lauderdale Beach Blvd., LLC d/b/a Exit 66 Nightclub was located on the insured premises, presumably at 223 South Fort Lauderdale Beach

---

[3] The Camargo Complaint (as well as the Wright Complaint and the relevant insurance policies) was attached as an exhibit to the Amended Complaint and therefore may be considered on a motion to dismiss. *See* Fed. R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

[4] The policy does not identify what entities "ETAL" refers to. If "ETAL" applies to any business owned or operated by Beach Bars USA, LLC that is located at 229 S. Ft. Lauderdale Beach Boulevard or 219-223 S. Ft. Lauderdale Beach Boulevard, then there was no reason to amend the policy to include d/b/a Sangria as it was already presumably covered. The fact that the policy was so amended could imply that "ETAL" was not inclusive of all Beach Bar USA, LLC's entities.

Boulevard. (*Id*., at ¶ 16).  As pled, the Amended Complaint states sufficient facts to survive a Rule 12(b)(6) dismissal.

**B. The Unfiled Lawsuits**

Indemnity argues that Plaintiffs claims related to the unfiled lawsuits are not ripe.  I agree.  Ripeness is a justiciability doctrine "'that go[es] to the heart of the Article III case or controversy requirement.'"  *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010) (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010)).  Where ripeness is at issue, a federal court is obligated to inquire into its subject matter jurisdiction.  *See In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011) (ripeness goes to a court's subject matter jurisdiction); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).  "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes."  *Digital Props., Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir. 1997).  A court makes a determination of ripeness by assessing "the fitness of the issues for judicial decision and the hardship to the parties of withholding judicial review."  *Mulhall*, 608 F.3d at 1291 (quoting *Harrell*, 608 F.3d at 1258).  "A claim is not ripe when it is based on speculative possibilities."  *In re Jacks*, 642 F.3d at 1332 (citing *Bowen v. First Family Fin. Servs., Inc.,* 233 F.3d 1331, 1341 n.7 (11th Cir. 2000)); *see also Mulhall*, 608 F.3d at 1291 & n.11 (the existence of future contingencies will weigh in favor of finding the claim is unripe).

"[T]he duty to defend turns on the 'grounds for liability' expressed by 'allegations of fact' in the underlying complaints." *Lime Tree*, 980 F.2d at 1405 (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.,* 470 So. 2d 810, 813-14 (Fla. Dist. Ct. App. 1985)).  Here, the duty to defend depends on the future contingency of a complaint being filed.  Therefore, at this stage, it is

6

impossible to discern whether nonexistent allegations of fact trigger Indemnity's duty to defend Plaintiffs. The claims are unripe and must be dismissed, as this Court is without subject jurisdiction. *Am. Tobacco Co.*, 168 F.3d at 410.[5]

### IV. CONCLUSION

For the reasons explained in this Order the Partial Motion to Dismiss Amended Complaint (ECF No. 30) is **GRANTED** as to the claims described in Paragraph 18 of the Amended Complaint, and **DENIED** in all other respects.

**DONE and ORDERED** in chambers, at Miami, Florida, this 29th day of March 2012.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

---

[5] Plaintiffs readily admit that they "have not been sued on any of the eight (8) 'claims.'" And conceded that they "may never be sued." (ECF No. 31 at 6 & n.4). Plaintiffs further state that "it would be sheer speculation at this point to suggest who the named defendant(s) would or could be in the event a lawsuit may be filed on any one or more of these claims." (ECF No. 31 at 6). Plaintiffs have, in essence, abandoned their own claims by asserting that the unfiled lawsuits "may never come to fruition" and that "there have been no expenses, fees or costs incurred to date by plaintiff(s) on any of these claims for which plaintiff would *now* have a claim for declaratory or contractual relief in this litigation. Whether plaintiffs will in the future, again, is subject to mere guesswork." *Id.* (emphasis in original). Plaintiffs even mention "the possibility that [the claims] may ripen in the future." *Id.* If the claims may ripen in the future, it logically follows that they are not ripe now.